## INJURIES INFLICTED BY SERVANTS WITHIN THE SCOPE OF THEIR EMPLOYMENT.

[Circuit Court of Lucas County.]

THE CINCINNATI, HAMILTON & DAYTON RAILROAD COMPANY v. JOHN B. KLUTE.*

Decided, January 30, 1905.

*Torts by Servants—Presumption as to Their Being Employes—And Acting Within the Scope of Their Employment—Evidence of Acts Immediately Subsequent to the Injury—Questions for the Jury— Punitive Damages.*

After controversy between a municipality and a railroad company relative to the right of the company to lay tracks across ground claimed as a street, a car loaded with material for track-laying, and accompanied by fifteen or twenty men, emerged on Sunday afternoon from the company's warehouse and was pushed down to the point of the disputed crossing, where the plaintiff, a policeman, was stationed to prevent the laying of the track. The work of unloading the car began against the policeman's protest, and while attempting to arrest one of the men, and after a command by one in charge to throw the ties on the policeman if he did not get out of the way, he was struck by a tie and injured. *Held:*

1. That in the absence of evidence to the contrary the facts were sufficient to warrant the jury in finding that the men were employes of the railroad company, and that they were acting under orders from the company in attempting to lay the track.
2. That in throwing a tie upon the plaintiff these men were, under the circumstances, acting within the scope of their employment and authority.
3. That evidence of acts on the part of the men immediately subsequent to the injury of the plaintiff, including the pushing with a locomotive of a car over the end of the rails into the street for the apparent purpose of obstructing the street, was properly admitted as a part of the *res gestae.*
4. That it was a case where punitive or exemplary damages were properly included.

HULL, J.; HAYNES, J., and PARKER, J., concur.

This action was brought by Klute, a policeman, to recover damages which he sustained at the hands of employes of the

*Affirmed by the Supreme Court without report, December 12, 1905.

railroad company.  His claim is that at the time he was injured the employes of the company referred to were acting under the authority and directions of the company within the scope of their employment, and that they maliciously and willfully injured him, while so acting, and he therefore brought this action for damages.

The injury occurred on July 5th, 1903.  On that day, and for some time prior thereto, there had been a controversy going on between the city of Toledo and the railroad company in regard to a certain street, or alleged street, in Toledo, on the east side of the river, called Wilmot street, the city claiming that the street had been projected through the territory at that point, and the railroad company denying that such was the fact.  For some time prior to July 5th, 1903, the railroad company had been threatening to lay a track across this street, and policemen had been stationed there from time to time to prevent this, and on the morning of the 5th, which was Sunday, Klute, under orders from his superior officer, took his station under a bridge near this point, where it was thought that the railroad company contemplated laying a track across the street.  At about 2:30 or 3 o'clock in the afternoon the work of laying the track commenced, out of which the trouble arose.

At the close of the testimony for the plaintiff a motion was made to direct a verdict for the defendant.  This was overruled; and thereupon the railroad company announced that it did not desire to offer any evidence.  The case then went to the jury on the testimony offered by the plaintiff, and a verdict was returned in favor of Klute for damages.

The case involves the question as to whether what the men did in the way of injuring the plaintiff was within the scope of their employment, and, in the first place, whether they had any authority to do the work they were doing.  It is claimed by the plaintiff in error that the court erred in not directing a verdict for the defendant upon the motion, and there are some other points in the case.

There is no positive evidence—no witnesses testified that the men who were at work doing this work were ordered by the railroad company to do it, or that they were in fact in the em-

ploy of the railroad company; but while Klute was at his station under the bridge, a car with some fifteen or twenty men came out of the railroad company's warehouse, which was near, apparently railroad men, and started with the car, pushing it, and the car was loaded with rails and ties and plates and spike-mauls. With the car so loaded, they started down the track toward this street, fully equipped to lay the track, and apparently in the employ of the railroad company. They came out of the warehouse as railroad men would, and there was every indication that they were employes of the company, and when they reached the street, they began the work of laying the track across it.

We think that, in the absence of any evidence to the contrary, the facts were sufficient to warrant the jury in finding that the men were employes of the railroad company, and had been ordered to do this particular work. This was on Sunday, and the work was being done with railroad tools and equipment in the ordinary way, and they were permitted to continue without any interference on the part of the railroad company or its officers. They went to the street and there began to unload rails and ties and to build the track, and before they stopped they got half-way across the street. We think the evidence was ample to raise a presumption that would need to be overcome by evidence that these men were doing what they did under the direction and authority of the railroad company. It is hardly to be supposed that a gang of men of the number of fifteen or twenty would go to the railroad warehouse and start out on Sunday afternoon to perform this work unless they had been hired to do it and had authority.

But it is said that the injury to Klute was not, in any event, within the scope of their authority, or of their employment; that if they injured him they stepped outside of their employment entirely, and that, therefore, the railroad company is not liable. It is well settled in this state that an employer may be liable for the willful and malicious acts of an employe, if he is within the scope of his employment. In *The Nelson Business College Company* v. *Lloyd*, 60 Ohio St., 448, the first paragraph of the syllabus is:

"An employer is liable for the willful or malicious acts of his servant done in the course of the servant's employment."

In the opinion many authorities are cited as to the growth of this doctrine and of its establishment, and the whole question is discussed by the judge delivering the opinion. I will come back to this case later, on some other points in the case.

Was this in the scope of their employment—this injury of Kulte? The testimony shows that Klute came out into the street as soon as he saw this demonstration and ordered the men to stop. He was in the full uniform of an officer, including his helmet and badge. He ordered them to stop, and told them he was there to prevent them from doing this work; that if they did not desist he would be required to arrest them. They paid no attention to him. Assuming, as I do, that they were acting under the authority of the railroad company in laying this track, they continued with the work they had been directed to do, and Klute undertook to stop them, but without success. Finally he took hold of one, and pushed him a little beyond the car. There were some men on one side of the car and some on the other side pulling the car, others were pushing it, and, after the car stopped, they commenced pulling the ties off. One of the men on the other side of the car, apparently in authority—there were two men there who appeared to be in authority, O'Brien, who was section foreman, apparently, and Tomkins, who was called a yardmaster—called out "Why don't you get these ties off?" and they answered "We can not, the policeman is in the way." The same man replied "To hell with the policeman; if he doesn't get out of the way, throw the ties on him." About that time Klute was in a struggle with one of the men; he had his back turned to the car, and just then a tie struck him in the back, injuring him quite severely.

These men apparently had been directed to go out and lay that track across that street. The railroad company understood very well that the city objected to their laying the track. The controversy had been going on for some time. Sunday had been selected as the day for doing this work, other than on a weekday, perhaps on account of the difficulty of securing injunctions, etc. These men were in charge of two men, and obeyed their

orders; they paid no attention to the policeman when he told them to desist and threatened them with arrest; he was at the time interfering with the unloading of the ties and the building of this track; and the men were ordered if he got in the way to throw the ties on him; and they did throw a tie on him; at least, that is the claim of the plaintiff.

We think there is sufficient evidence to show, in the absence of anything to the contrary, that in throwing this tie on Klute under these circumstances, they were acting within the scope of their employment and authority; and it is a fair presumption, from all these demonstrations, that they were acting under instructions from the railroad company in attempting to put the track across the street, and paying no attention to the policeman when he got in their way and interfered with the work.

It is said that in the throwing of the tie, it does not appear but that one or more of the men picked up the tie from the ground and struck him in the back, or took it off the car, not for the purpose of carrying on the work, or in furtherance of the work they were doing there, but to strike Klute, and that under such circumstances the act would be beyond the scope of their authority. And it is undoubtedly true, under the authorities, that, if the employe commits an act of violence while doing his work, and goes outside of his work and employment to do it, and it is not necessary in the performance of his work, that in such case the employer is not liable. Although Klute did not see just how this happened, we think the jury were warranted in finding that he was struck in the back by a tie that had just been taken off the car and let fall on his back purposely to get him out of the way. His back was turned at the time, but he was only about a foot away from the end of the car, and about the same distance from the side; he had just had this controversy with the men; he had just heard the order given, if the policeman did not get out of the way, to hit him with the tie, and immediately after that he was struck. All the circumstances and things that were said and done there at the time, we think, indicate that this tie was thrown upon Klute for the purpose of preventing him from interfering with the work; and the evidence was sufficient to sustain the claim that it was done within the scope of the authority of the men.

In the case before referred to, 60th Ohio St., 448, this question is discussed at some length. In this case the plaintiff was in the employ of the business college and was repairing an electric light in a room; the janitor come in to do his work, and the plaintiff, who was repairing an electric light, had a ladder and was standing on it doing his work; the janitor could not complete his duties without the ladder being moved; he requested the electrician to step down from the ladder until he could do his work; the electrician declined to do so and the janitor got angry and shoved the. ladder so the man on the ladder fell off and was injured. The court of common pleas took the case from the jury and directed a verdict in favor of the defendant; this was reversed by the circuit court and the Supreme Court affirmed the circuit court, holding that the case should have gone to the jury. In the second paragraph of the syllabus, the court say:

"2. When the act complained of may or may not be, from its nature, in the course of the servant's employment, and this depends upon the real motive or purpose of the servant in doing the act, it is a question for the jury to determine upon a consideration of all the circumstances adduced in evidence.

"3. In a suit against an employer for an injury caused by the wrongful act of his servant, and the evidence is such that different minds may draw different conclusions from it as to real motive and purpose of the servant in doing an act, apparently within the course of his employment, it should be left to the jury to determine the question, under proper instructions, as to the law; and it is error for the court, in such case, to direct a verdict for the defendant."

It seems to us that the case at bar is a stronger case to submit to the jury than the Nelson Business College case; and the Supreme Court held that should have gone to the jury. The whole question is discussed very fully in the opinion. There are other cases in Ohio bearing upon the question, as to when the malicious or willful act of the employe should be regarded as within the scope of the employment, and therefore the master liable for such malicious and willful acts.

The case of *Stranahan Brothers Company* v. *Coit*, 55 Ohio St., 398, is a strong case. Here the employe was selling milk under contract to the Stranahan Brothers Catering Company,

among others, and his employe, while driving the milk wagon, adulterated the milk with water, and delivered it in that condition; he did this because he had an unfriendly feeling towards his master, a malicious feeling, and wanted to injure him. The master had no knowledge of his doing anything of the kind. But the Supreme Court held that this was done in the course of his employment and within its scope, and that the master was liable in damages for such act of his servant, although done to injure his master.

The case of *The Passenger Railroad Company* v. *Isaac Young,* 21 Ohio St., 518, is an authority on this general subject and may also be cited.

We think in the case at bar the jury might well find from this evidence that what was done there was within the scope of the employment. These men were apparently determined to build the track across the street in the face of opposition, and, in fact, Tompkins, I think it was, or O'Brien, said to Klute immediately after the injury (and as part of the transaction), that he told his men before they went out that there was a policeman down there, but that as long as he did not interfere with them to do nothing to him; but if he interfered, to hit him with the spike maul; this was just before they came out of the warehouse; and we think it is fair to conclude that it was the intention to lay this track against the protests of the policeman, and against his forcible opposition, if necessa y.

That portion of the charge of the court to the jury that they might include punitive or exemplary damages was excepted to. But it seems to be settled that in this kind of a case punitive damages may be included. In *The Atlantic & Great Western Railway Company* v. *Michael Dunn,* 19 Ohio St., 162, the syllabus is:

"A corporation may be subjected to exemplary damages or punitive damages for tortious acts of its agents or servants done within the scope of their employment, in all cases where natural persons, acting for themselves, if guilty of like tortious acts, would be liable to such damages."

And this seems to have stood as the law on this subject ever since.

There was evidence that the plaintiff was also struck with a spike maul on his back after he had been struck with the tie. One of the men, as the plaintiff was walking away, struck him on the back with a spike maul; but any claim for damages on that account was withdrawn by the court from the jury, on the ground that what he did on that occasion was not within the scope of his employment, but that it was purely an assault and battery on Klute, for which the defendant was not liable.

Evidence was admitted as to what occurred after the injury by the tie. It is claimed that this should not have been done. The controversy continued for some time. Klute sent to the central police station for help, the chief of police finally came with other officers, and many things were said and done by the men who were there; some of it was admitted in evidence as part of the transaction, of the *res gestae,* and we think properly so; it was one continuous transaction, and we think this evidence was properly admitted. After other policemen had come and the laying of the track was stopped, some of the men were taken to the police station and soon after that a locomotive drawing a C., II. & D. car came out of the railroad yards—or rather pushed a car out of the yards and across the street so far as the track had been laid until the rails spread, and then shoved the cars over as far as possible on the ground. Evidence of this was objected to, and its admission is claimed to be error, but we think the evidence was admissible. It related to and was connected with the transaction and tended to show that the railroad company authorized the construction of this track across the street, showing that as soon as it was partially constructed they occupied it with a locomotive and a car, and undertook thereby to take possession of the street, and throw a car across it. The locomotive used was a C., H. & D. engine, and we think, as tending to show that this whole matter was authorized and approved by the company, this was competent evidence.

A plat of a portion of the city, showing where this street was located, was admitted in evidence; it is claimed that this was error; but we think it was not. There was a controversy here about the street. It is immaterial for the purpose of this case

whether the city had the right to open this street or not. It claimed to have the right and had sent an officer to this point to guard the street; and, although this question was not very material, there was no error in admitting the plat.

I think I have covered all the points I need mention. In our opinion, the action of the court in refusing to take the case from the jury was correct; the evidence fully warranted the jury in finding that the men were authorized to build the track across this street; that they were expected to use force, if necessary; that when the plaintiff was struck in the back with the tie, they were acting within the scope of their employment. We find no error in the record. The judgment of the court of common pleas will therefore be affirmed.

*Swayne, Hayes & Tyler*, for plaintiff in error.

*Ralph Emery* and *C. A. Seiders*, for defendant in error.